## J. HENDRICKS v. STATE.

No. A-4660.   Opinion Filed Feb. 21, 1925.
(233 Pac. 242.)

(Syllabus.)

**Evidence—Ex Parte Written Statement by Codefendant After Arrest Held Inadmissible.** An ex parte written statement made by one codefendant after his arrest, in the absence of the others, concerning an offense fully consummated, and implicating another codefendant, is inadmissible against the latter.

Appeal from County Court, Beaver County; H. D. Meese, Judge.

J. Hendricks was convicted of manufacturing whisky, and he appeals.   Reversed.

R. E. Dickson, for plaintiff in error.

BESSEY, P. J.   J. Hendricks, plaintiff in error, defendant in the trial court, was convicted of manufacturing whisky, with his punishment assessed by the jury at confinement in the county jail for 30 days, and to pay a fine of $50.

The defendant was a farmer who owned and controlled 560 acres of land in Beaver county, 40 miles from the town of Beaver, the county seat.   A portion of this land he rented to Art Sumner, a codefendant.   The officers found a still and some whisky on the portion of the land occupied by Sumner; the whisky was found in Sumner's chicken house. No one was in charge of the still at the time it was seized.

There was no direct evidence that Hendricks had anything to do with the operation of the still or the whisky found in the possession of Sumner.   At the time of the latter's arrest he made a written statement, which he delivered to the sheriff, as an explanation of his (Sumner's) connection with the affair.   The statment was as follows:

"On the 11th day of September, 1922, the three Tiffney girls came to my place, which I had rented from Jay Hend-

ricks; they came to help pull broom corn. At noon, at the dinner table, Alice Tiffney said she had found something on Joe Hendrick's place on her way over that morning, and described it as a lot of barrels, one of which was filled with stuff and a lot of pipe and other things. On the following Sunday, which was the 17th, I and Lum Blakley went to the place she had described, and found the complete outfit for making whisky, the same one that the sheriff brought to town. It was located on Joe Hendricks' place between a quarter and a half of a mile from Jay Hendricks' house. I made a contract with Lum Blakley to buy the still for $25. He was to help run the whisky and help peddle it until he got the money to pay for the still; he gave me the names of his customers. Tim Clifford and Bill Waters were among the names, and said all of the Mexicans at Follet would buy it. The price was $5 a quart or $17 a gallon. We moved the still that night to about a quarter or a half of a mile east of where it was to the place I have rented from Jay Hendricks, and the place where the sheriff found it. On Friday night, the 22d of September, Lum Blakley run part of the whisky, and he and I went back Sunday night and run the balance, which was the whisky found in my chicken house on Jay Hendricks' place. At the time the Tiffney girl told about the still it was talked about all over the neighborhood. I heard it talked about in the presence of Jay Hendricks."

This written statement was introduced by the state over the objection of the defendant Hendricks. This was error. The statement, so far as it implicated Hendricks, was partially hearsay testimony—a statement not made under oath—and deprived the defendant of his right to confront and cross-examine Art Sumner. If Hendricks and Sumner were co-conspirators, the conspiracy was at an end, and the statement was not admissible on that theory.

For the reason that the evidence is insufficient to support the verdict, and because of the reception in evidence of the incompetent statement above quoted and other incompetent testimony not recited, the cause is reversed.

DOYLE and EDWARDS, JJ., concur.